AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED/DATE: s/Tiffany Edgmon 10/06/25

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. M-25-586-CMS
)
Two blue Motorola Moto G Play cellular phones )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

located in the _____Western_____ District of _____Oklahoma_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 & 21 O.S. § 1435(B) | Burglary in the Third Degree |
| 18 U.S.C. § 1153 & 21 O.S. § 1435(A) | Burglary in the Second Degree |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

See the Affidavit of Oklahoma State Bureau of Investigation (OSBI) Lieutenant David Gatlin, which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*David Gatlin*
Applicant's signature

David Gatlin, OSBI, Lieutenant
Printed name and title

Sworn to before me and signed in my presence.

Date: October 6, 2025

*Chris M. Stephens*
Judge's signature

City and state: Oklahoma City, Oklahoma

CHRIS M. STEPHENS, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Gatlin, a Lieutenant with the Oklahoma State Bureau of Investigation (OSBI), and a Special Deputy U.S. Marshal on the Federal Bureau of Investigation Safe Trails Task Force, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. This Affidavit is made in support of an application for a warrant to search the following digital devices: two Navy-blue Motorola Moto G Play cellular telephones, each with three camera lenses, and each with a Velcro-type material adhered to the back (referred hereafter as **SUBJECT DEVICES**). The **SUBJECT DEVICES** are currently located in Purcell, Oklahoma, which is within the Western District of Oklahoma. The **SUBJECT DEVICES** are described in detail in Attachment A to this affidavit.

2. This affidavit is in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the **SUBJECT DEVICES** for the items specified in Attachment B hereto, which constitute instrumentalities, fruits, and evidence of violation of Burglary in the Third Degree, in violation of 18 U.S.C. § 1153 and 21 O.S. § 1435(B); Burglary in the Second Degree, in violation of 18 U.S.C. § 1153 and 21 O.S. § 1435(A); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).

3. I am a certified and commissioned police officer in and for the State of Oklahoma, for approximately 18 years, and is currently employed as a Lieutenant for the Oklahoma State Bureau of Investigation (OSBI). I was previously employed by the District

3 and District 6 Drug Task Forces. My training and education have included a Bachelor's Degree in Criminal Justice from the University of Oklahoma, OSBI Agent's Academy, the Oklahoma Bureau of Narcotics Investigators Course, and the State of Oklahoma Basic Peace Officer Academy.

4. As a Special Deputy with the FBI Safe Trails Task Force, I am authorized to investigate violations of the laws of the United States that occur in Indian Country and to execute warrants issued under the authority of the United States.

5. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. This investigation, described more fully below, has revealed that there is probable cause to believe that evidence relevant to multiple burglaries is located on the **SUBJECT DEVICES**. As a firearm was stolen in one of the burglaries, and the suspect is a convicted felon, such evidence is also relevant to the crime of Felon in Possession of a Firearm. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## TERMS

8. Based on my training and experience, I use the following technical terms and definitions:

    a. "Computer," as used broadly herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones. *See* 18 U.S.C. § 1030(e)(1).

    b. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude, with a high level of precision.

c. "Wireless telephone" (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## PROBABLE CAUSE FACTS

9. On August 20, 2025, a resident (VI-1) of Washington, Oklahoma, discovered their vehicle had been broken into and items in the vehicle had been taken. After a review of a neighbor's surveillance videos, VI-1 discovered an individual walking around their property in the early morning hours. Additionally, VI-1 saw a white Ford Excursion driving around the neighborhood during the same period of time. At the time the suspect was at VI-1's residence, VI-1's vehicle was parked next to his Oklahoma City Police

Department patrol vehicle. VI-1's residence is in the Western District of Oklahoma and within the boundaries of the Chickasaw Nation.

10. On August 21, 2025, at around 0539 hours, the Newcastle Police Department and the Chickasaw Lighthorse Police Department (LHPD) responded to a residence in Newcastle, Oklahoma for a burglary. The residents (VI-2) had multiple surveillance cameras that captured the suspect at their residence. NPD Officer Slentz responded to the residence, approaching from the west. Approximately two houses to the west of VI-2's residence, Officer Slentz saw a white male wearing red shorts, a plaid shirt, and black-rimmed glasses hiding behind a tree. Officer Slentz exited his patrol vehicle and ordered the male to show his hands. The suspect fled on foot, jumped into and swam across a pond, and entered a wooded area. Officers located a camouflage jacket, a pair of gloves, a pocketknife, and the VI-2's ammo can discarded near a residence approximately two-to-three doors west of VI-2.[1]

11. Surveillance videos show the suspect tampering with VI-2's vehicles, seemingly flattening the tires by puncturing them (multiple tires were, in fact, punctured and flattened). Videos captured of the rear of the property indicate the suspect opened VI-2's shed. An ammo can containing cornhole bean bags was taken from the shed (the ammo can was later recovered and returned to VI-2). Videos of the front of the property also captured a white Ford Excursion driving through the neighborhood. Additional

---

1 Surveillance videos show the suspect initially wore pants, gloves, a camouflage jacket, distinctive shoes, and dark-rimmed glasses.

surveillance from another residence showed the suspect carrying around an item (possibly his pants), carried over his shoulder.

12. The LHPD Officer Cash responded to the scene to assist and learned the suspect had fled on foot. Officer Cash learned the suspect was a white male that had long hair, black glasses, camouflaged jacket, red shorts, and brown shoes. The suspect dropped multiple property items as he fled.

13. While LHPD Officer Cash was holding the scene, and other officers were searching for the burglary suspect, Officer Cash saw a white Ford Excursion pass that bore a Cherokee Nation tag. Officer Cash saw the driver of the vehicle, a female, who appeared to be looking for someone. VI-2's residence is in the Western District of Oklahoma and within the boundaries of the Chickasaw Nation.

14. On August 22, 2025, at around 0049 hours, Officer Cash responded to a burglary at a residence in Washington, Oklahoma. This residence is located in the Western District of Oklahoma and within the boundaries of the Chickasaw Nation. The suspect of this burglary was wearing a camouflage jacket or hoodie and had taken a Smith & Wesson M&P firearm, with tape around the grip, from one of the resident's (VI-3) vehicles; and then fled the scene on foot. When Officer Cash arrived, he observed a white Ford Excursion parked down the road, bearing Cherokee Nation tag AK4014. Officers requested a records check on the vehicle and were advised the vehicle was registered to AUSTIN GARRETT REEVES. Officer Cash observed evidence, brown shoes, he believed were related to the above-described Newcastle burglary tied to the back door of the Ford Excursion.

15. LHPD Officers and the McClain County Sheriff's Office began searching the area and subsequently located REEVES hiding underneath a deck of a nearby residence. REEVES had the keys to the Ford Excursion in his pocket. Notably, REEVES was located at the same residence at which the Ford Excursion was parked.

16. Officers searched REEVES' vehicle and found VI-3's stolen firearm,[2] a garage door opener to VI-3's residence, and multiple property items taken from VI-1. VI-1 was on scene and identified the items belonging to him. Officers also located and seized **two Navy-blue Motorola Moto G Play cellular telephones** (the "**SUBJECT DEVICES**") in REEVES' vehicle.

17. Court records reveal REEVES was convicted of a crime punishable by more than one year and sentenced to a term of imprisonment on March 10, 2022.

18. While housed in a local jail, REEVES provided his mother with his phone number: 405-234-7711. Records obtained from Verizon Wireless revealed 405-234-7711 conversed with two phone numbers associated with REEVES' parents, further confirming the phone number was associated with REEVES. REEVES routinely conversed with an individual who used T-Mobile phone number 440-841-3754, including close in time to when REEVES and/or his vehicle were seen on surveillance cameras at the scenes of the burglaries. The records also indicated the device associated with Verizon Wireless telephone number 405-234-7711 was using International Mobile Equipment Identity

---

[2] REEVES has previously been convicted of a felony and is unable to lawfully possess firearms.

(IMEI) 354215682466467, which is a **Navy-blue Motorola Moto G Play** (the same type of device as the **SUBJECT DEVICES**).

## SPECIFICS OF SEARCH AND SEIZURE OF CELL PHONES

19. Searches and seizures of evidence from smartphones commonly require agents to download or copy information from the smartphones and its components, such as an SD Card attached to the phone, by a qualified expert in a laboratory or other controlled environment. This is almost always true for the following two reasons:

   a. Smartphone devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all of the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

   b. Searching smartphones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of smartphone hardware and software available requires even experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a smartphone system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or

encrypted files. Since smartphone evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

## SEARCH METHODOLOGY TO BE EMPLOYED REGARDING ELECTRONIC DATA

20. The search procedure for electronic data contained in smartphone hardware, smartphone software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a.    examination of all of the data contained in such smartphone hardware, smartphone software, or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

    b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above);

    c.    surveying various file directories and the individual files they contain;

    d.    opening files in order to determine their contents;

    e.    scanning storage areas;

    f.    performing key word searches through all electronic storage areas to

determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and

g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

21. In my training and experience, and in consultation with other Law Enforcement Officers that perform these types of investigations, conversations are commonly had via text message, telephone calls, or other messaging applications between the co-conspirators or other close family or friends regarding the crime being investigated. These communications could occur before, during, and after the crimes. In this case, during the August 21, 2025, Newcastle burglary investigation, responding officers observed a female driving what is believed to be REEVES' white Ford Excursion while REEVES was fleeing the scene. Additionally, the responding officer thought the woman driving the vehicle was looking for someone. Therefore, it is reasonable to believe, based on my training and experiences: that the yet unidentified woman was in the area while the crimes were committed and was driving REEVES' white Ford Excursion; that the yet unidentified woman was looking for REEVES while he fled from law enforcement; that REEVES and the yet unidentified woman communicated, via cellular telephone, about the crimes being committed and/or a location to where REEVES was, so she could pick him up after he fled from law enforcement.

## CONCLUSION

22. Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that evidence of these offenses are located on the

**SUBJECT DEVICES**.

23.     Based upon the foregoing, I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICES**, described in Attachment A, authorizing the seizure of the items described in Attachment B to this affidavit.

*David Gatlin*
David Gatlin
Special Agent
Oklahoma State Bureau of Investigation

SUBSCRIBED AND SWORN to before me this __6th__ day of October, 2025.

*Chris M. Stephens*
CHRIS M. STEPHENS
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF SUBJECT DEVICES

SUBJECT DEVICES – Two Navy-blue Motorola Moto G Play cellular telephones, each with three camera lenses, and each with a Velcro-type material adhered to the back.




## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

1. All records on the SUBJECT DEVICES described in Attachment A that relate to violations of Burglary in the Third Degree, in violation of 18 U.S.C. § 1153 and 21 O.S. § 1435(B); Burglary in the Second Degree, in violation of 18 U.S.C. § 1153 and 21 O.S. § 1435(A); and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), including:

   a. Evidence of user attribution showing who used or owned the SUBJECT DEVICES;

   b. Records between REEVES, and any other coconspirators, relating to the criminal offense above, to include those that have been deleted, including: incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

   c. Application data relating to the criminal offenses above;

   d. Evidence of the times SUBJECT DEVICES were used;

   e. Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT DEVICES;

f.  Records and information related to the geolocation and travel records of the **SUBJECT DEVICES** at a specific point in time.

2.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as an SD Card) and any photographic form.

3.  A search of the physical devices to collect any device identifiers, serial numbers, or other identifiers.